**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

IN RE:

**MARIELA C. ROMAN**                              **CASE NO.: 18-22930-LMI**

**AKA MARIELA C VIDAL,**                          **CHAPTER 7**

    **Debtor.**

_____/

## MOTION FOR RELIEF FROM AUTOMATIC STAY

Secured Creditor, U.S. Bank National Association, as Trustee for Residential Funding

Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2007-S7, by and through

the undersigned counsel, hereby moves this Court, pursuant to 11 U.S.C. § 362(d), for a

modification of the automatic stay provisions for cause, and, in support thereof, states the

following:

1. Debtor, Mariela C. Roman aka Mariela C Vidal, filed a voluntary petition pursuant to
   Chapter 7 of the United States Bankruptcy Code on October 18, 2018.

2. Jurisdiction of this cause is granted to the Bankruptcy Court pursuant to 28 U.S.C. §
   1334, 11 U.S.C. § 362(d), Fed. R. Bankr. P. 4001(a), and all other applicable rules and
   statutes affecting the jurisdiction of the Bankruptcy Courts generally.

3. Secured Creditor hereby waives the requirements of 11 U.S.C. § 362(e). The automatic
   stay of any act against property of the estate under § 362(a) shall continue until this Court
   orders or the stay is otherwise terminated by operation of law.

4. On April 11, 2007, Debtor(s) executed and delivered a Promissory Note ("Note") and a

Mortgage ("Mortgage") securing payment of the Note in the amount of $500,000.00 to GMAC Mortgage, LLC. The Mortgage was recorded on April 26, 2007 in Book 25569 at Page 1829 of the Public Records of Miami-Dade County, Florida.   The loan was transferred to Secured Creditor. True and accurate copies of documents establishing a perfected security interest and ability to enforce the terms of the Note are attached hereto as Composite Exhibit "A."  The documents include copies of the Note with any required indorsements, Recorded Mortgage, Assignment(s) of Mortgage, and any other applicable documentation supporting the right to seek a lift of the automatic stay and foreclose, if necessary.

5.  The Mortgage provides Secured Creditor a lien on the real property located at 3856 SW 154th St, Miami, FL 33185 in Miami-Dade County, and legally described as stated in the Mortgage attached in Composite Exhibit "A."

6.  On May 1, 2012, Debtor entered into a Loan Modification Agreement thereby decreasing the principal balance to $447,459.83. Per the terms of the Loan Modification Agreement, $232,000.00 of the principal balance was deemed as deferred principal balance.

7.  The terms of the aforementioned Note and Mortgage have been in default, and remain in default, since May 1, 2017. See Secured Creditor's statement in regard to indebtedness and default, attached hereto and incorporated herein as Exhibit "B."

8.  On May 23, 2018, Plaintiff filed a foreclosure action in the Circuit Court for the Eleventh Judicial Circuit in and for Miami-Dade County, Case Number: 2018-009327-CA-01. Due to the filing of the instant bankruptcy petition, the foreclosure action has been stayed.

9.  As per the Indebtedness Worksheet attached hereto, Secured Creditor is due the pre-petition amount of $642,763.33 and the post-petition amount of $2,445.14, as of November 30, 2018.  See Exhibit "C" attached hereto.  The post-petition payment address is: 1661 Worthington Road, Suite 100 West Palm Beach, FL 33409.

10. The appraised value of the property is $504,471.00.  See Exhibit **"D"** which is attached hereto and permissible as a property valuation under Fed. R. Evid. 803(8).

11. Based upon the Debtor(s)' schedules, the property is claimed as exempt.  The Trustee has not abandoned the property.

12. Secured Creditor's security interest in the subject property is being significantly jeopardized by Debtor(s)' failure to comply with the terms of the subject loan documents while Secured Creditor is prohibited from pursuing lawful remedies to protect such interest.  Secured Creditor has no protection against the erosion of its collateral position and no other form of adequate protection is provided.

13. If Secured Creditor is not permitted to enforce its security interest in the collateral or be provided with adequate protection, it will suffer irreparable injury, loss, and damage.

14. Secured Creditor respectfully requests the Court grant it relief from the Automatic Stay in this cause pursuant to §362(d)(1) of the Bankruptcy Code, for cause, namely the lack of adequate protection to Secured Creditor for its interest in the above stated collateral.  The value of the collateral is insufficient in and of itself to provide adequate protection which the Bankruptcy Code requires to be provided to the Secured Creditor. Secured Creditor additionally seeks relief from the Automatic Stay pursuant to §362(d)(2) of the Bankruptcy Code, as the collateral is unnecessary to an effective reorganization of the

Debtor's assets.

15. Once the stay is terminated, the Debtor will have minimal motivation to insure, preserve, or protect the collateral; therefore, Secured Creditor requests that the Court waive the 14-day stay period imposed by Fed.R.Bankr.P. 4001(a)(3).

16. Secured Creditor has incurred court costs and attorney's fees in this proceeding and will incur additional fees, costs and expenses in foreclosing the Mortgage and in preserving and protecting the property, all of which additional sums are secured by the lien of the mortgage.  Secured Creditor seeks an award of its reasonable attorneys' fees and costs, or alternatively, leave to seek recovery of its reasonable attorneys' fees and costs in any pending or subsequent foreclosure proceeding.

17. A Proposed Order accompanies this Motion.  See Exhibit "E" attached hereto.

**WHEREFORE**, Secured Creditor, prays this Honorable Court enter an order modifying the automatic stay under 11 U.S.C. § 362(d) to permit Secured Creditor to take any and all steps necessary to exercise any and all rights it may have in the collateral described herein, to gain possession of said collateral, to waive the 14-day stay imposed by Fed.R.Bankr.P. 4001(a)(3), to seek recovery of its reasonable attorneys' fees and costs incurred in this proceeding, and to any such further relief as this Honorable Court deems just and appropriate.

ROBERTSON, ANSCHUTZ & SCHNEID, P.L.
Attorney for Secured Creditor
6409 Congress Ave., Suite 100
Boca Raton, FL 33487
Telephone: 561-241-6901
Facsimile: 561-997-6909
By: /s/ Christopher P. Salamone
Christopher P. Salamone, Esquire
Florida Bar Number 75951
Email: csalamone@rasflaw.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on December 18, 2018, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, and a true and correct copy has been served via CM/ECF or United States Mail to the following parties:

Mariela C. Roman
Federal Correctional Complex
Coleman Prison Camp
POB 1027
Coleman, FL 33521

Ross R Hartog
101 NE Third Avenue
Suite 1210
Fort Lauderdale, FL 33301

Office of the US Trustee
51 S.W. 1st Ave.
Suite 1204
Miami, FL 33130

ROBERTSON, ANSCHUTZ & SCHNEID, P.L.
Attorney for Secured Creditor
6409 Congress Ave., Suite 100
Boca Raton, FL 33487
Telephone: 561-241-6901
Facsimile: 561-997-6909
By: /s/ Christopher P. Salamone
Christopher P. Salamone, Esquire
Florida Bar Number 75951
Email: csalamone@rasflaw.com

Document drafted by and
RECORDING REQUESTED BY:
Ocwen Loan Servicing, LLC
3451 Hammond Avenue
Attn: Record Services
Waterloo, IA  50702

2833

SPACE ABOVE THIS LINE FOR RECORDER'S USE

### LIMITED POWER OF ATTORNEY

**The trusts identified on the attached Schedule A (the "Trusts"),** by and through **U.S. Bank National Association,** a national banking association organized and existing under the laws of the United States and having an office at 60 Livingston Avenue, EP-MN-WS3D, St. Paul, MN  55107, not in its individual capacity but solely as Trustee ("Trustee"), hereby constitutes and appoints Ocwen Loan Servicing, LLC, ("Servicer"), and in its name, aforesaid Attorney-In-Fact, by and through any officer appointed by the Board of Directors of Servicer, to execute and acknowledge in writing or by facsimile stamp all documents customarily and reasonably necessary and appropriate for the tasks described in the items (1) through (10) below; provided however, that the documents described below may only be executed and delivered by such Attorneys-In-Fact if such documents are required or permitted under the terms of the related servicing agreements and no power is granted hereunder to take any action that would be adverse to the interests of U.S. Bank National Association.  This Limited Power of Attorney is being issued in connection with Servicer's responsibilities to service certain mortgage loans (the "Loans") held by the Trustee.  These Loans are secured by collateral comprised of Mortgages, Deeds of Trust, Deeds to Secure Debt and other forms of Security instruments (collectively the "Security Instruments") encumbering any and all real and personal property delineated therein (the "Property") and the Notes secured thereby.  Please refer to **Schedule A** attached hereto.

1.    Demand, sue for, recover, collect and receive each and every sum of money, debt, account and interest (which now is, or hereafter shall become due and payable) belonging to or claimed by the Trustee, and to use or take any lawful means for recovery by legal process or otherwise, including but not limited to the substitution of trustee serving under a Deed of Trust, the preparation and issuance of statements of breach, notices of default, and/or notices of sale, accepting deeds in lieu of foreclosure, evicting (to the extent allowed by federal, state or local laws) foreclosing on the properties under the Security Instruments by judicial or non-judicial foreclosure, actions for temporary restraining orders, injunctions, appointments of receiver, suits for waste, fraud and any and all other tort, contractual or verifications in support thereof, as may be necessary or advisable in any bankruptcy action, state or federal suit or any other action.

2. Execute and/or file such documents and take such other action as is proper and necessary to defend the Trustee in litigation and to resolve any litigation where the Servicer has an obligation to defend the Trustee, including but not limited to dismissal, termination, cancellation, rescission and settlement.

3. Transact business of any kind regarding the Loans, as the Trustee's act and deed, to contract for, purchase, receive and take possession and evidence of title in and to the Property and/or to secure payment of a promissory note or performance of any obligation or agreement relating thereto.

4. Execute, complete, indorse or file bonds, notes, mortgages, deeds of trust and other contracts, agreements and instruments regarding the Borrowers and/or the Property, including but not limited to the execution of estoppel certificates, financing statements, continuation statements, releases, satisfactions, assignments, loan modification agreements, payment plans, waivers, consents, amendments, forbearance agreements, loan assumption agreements, subordination agreements, property adjustment agreements, management agreements,  listing agreements, purchase and sale agreements and other instruments pertaining to mortgages or deeds of trust, and execution of deeds and associated instruments, if any, conveying the Property, in the interest of the Trustee.

5. Endorse on behalf of the undersigned all checks, drafts and/or other negotiable instruments made payable to the undersigned.

6. Execute any document or perform any act in connection with the administration of any PMI policy or LPMI policy, hazard or other insurance claim relative to the Loans or related Property.

7. Execute any document or perform any act described in items (3), (4), and (5) in connection with the termination of any Trust as necessary to transfer ownership of the affected Loans to the entity (or its designee or assignee) possessing the right to obtain ownership of the Loans.

8. Subordinate the lien of a mortgage, deed of trust, or deed to secure debt (i) for the purpose of refinancing Loans, where applicable, or (ii) to an easement in favor of a public utility company or a government agency or unit with powers of eminent domain, including but not limited to the execution of partial satisfactions and releases and partial reconveyances reasonably required for such purpose, and the execution or requests to the trustees to accomplish the same.

9. Convey the Property to the mortgage insurer, or close the title to the Property to be acquired as real estate owned, or convey title to real estate owned property ("REO Property").

10. Execute and deliver the following documentation with respect to the sale of REO Property acquired through a foreclosure or deed-in-lieu of foreclosure, including, without limitation: listing agreements; purchase and sale agreements; grant / limited or special warranty / quit claim deeds or any other deed, but not general warranty deeds, causing the transfer of title of the property to a party contracted to purchase same; escrow instructions; and any and all documents necessary to effect the transfer of REO Property.

Servicer hereby agrees to indemnify and hold the Trustee, and its directors, officers, employees and agents harmless from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind or nature whatsoever incurred by reason or result of the exercise by the Servicer of the powers specifically granted to it under the related servicing agreements.  The foregoing indemnity shall survive the termination of this Limited Power of Attorney and the related servicing agreements or the earlier resignation or removal of the Trustee under the related servicing agreements listed on Schedule A, attached.

**Witness** my hand and seal this 17th day of May, 2013.

**NO CORPORATE SEAL**

On Behalf of the Trusts, by
U.S. Bank National Association, as Trustee

Witness: Karen L. Warren

By: _____
Judith M. Zuzek, Vice President

Witness: Matt Hamilton

By: _____
Jason M. Ross, Vice President

Attest: Jesse J. Barkdull, Trust Officer

## CORPORATE ACKNOWLEDGMENT

State of Minnesota

County of Ramsey

On this 17th day of May, 2013, before me, the undersigned, a Notary Public in and for said County and State, personally appeared Judith M. Zuzek, Jason M. Ross and Jesse J. Barkdull, personally known to me (or proved to me on the basis of satisfactory evidence) to be the persons who executed the within instrument as Vice President, Vice President and Trust Officer, respectively of U.S. Bank National Association, as Trustee, a national banking association, and acknowledged to me that such national banking association executed the within instrument pursuant to its by-laws or a resolution of its Board of Directors.

WITNESS my hand and official seal.

Signature: _____
Michael E. Boevers
My commission expires: 01/31/2016

MICHAEL E. BOEVERS
NOTARY PUBLIC - MINNESOTA
My Commission Expires Jan. 31, 2016

| U.S. Bank National Association, as Trustee, for | |
|---|---|
| Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2004-KS12 | 2004-KS12 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2004-PS1 | 2004-PS1 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2004-S7 | 2004-S7 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2004-S8 | 2004-S8 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2004-S9 | 2004-S9 |
| Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2005-AHL1 | 2005-AHL1 |
| Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2005-AHL2 | 2005-AHL2 |
| Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2005-AHL3 | 2005-AHL3 |
| Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2005-EFC1 | 2005-EFC1 |
| Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2005-EFC2 | 2005-EFC2 |
| Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2005-EFC3 | 2005-EFC3 |
| Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2005-EFC4 | 2005-EFC4 |
| Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2005-EFC5 | 2005-EFC5 |
| Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2005-EFC6 | 2005-EFC6 |
| Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2005-EMX1 | 2005-EMX1 |
| Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2005-EMX2 | 2005-EMX2 |
| Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2005-EMX3 | 2005-EMX3 |
| Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2005-EMX4 | 2005-EMX4 |
| Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2005-KS1 | 2005-KS1 |
| Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2005-KS10 | 2005-KS10 |
| Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2005-KS11 | 2005-KS11 |
| Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2005-KS12 | 2005-KS12 |
| Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2005-KS2 | 2005-KS2 |
| Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2005-KS3 | 2005-KS3 |

| | |
|---|---|
| Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2005-KS4 | 2005-KS4 |
| Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2005-KS5 | 2005-KS5 |
| Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2005-KS6 | 2005-KS6 |
| Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2005-KS7 | 2005-KS7 |
| Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2005-KS8 | 2005-KS8 |
| Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2005-KS9 | 2005-KS9 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2005-S1 | 2005-S1 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2005-S3 | 2005-S3 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2005-S4 | 2005-S4 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2005-S5 | 2005-S5 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2005-S6 | 2005-S6 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2005-S8 | 2005-S8 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2005-S9 | 2005-S9 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2005-SA1 | 2005-SA1 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2005-SA2 | 2005-SA2 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2005-SA3 | 2005-SA3 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2005-SA4 | 2005-SA4 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2005-SA5 | 2005-SA5 |
| Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2006-EFC1 | 2006-EFC1 |
| Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2006-EFC2 | 2006-EFC2 |
| Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2006-EMX1 | 2006-EMX1 |
| Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2006-EMX2 | 2006-EMX2 |
| Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2006-EMX3 | 2006-EMX3 |
| Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2006-EMX4 | 2006-EMX4 |
| Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2006-EMX5 | 2006-EMX5 |

| | |
|---|---|
| Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2006-EMX6 | 2006-EMX6 |
| Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2006-EMX7 | 2006-EMX7 |
| Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2006-EMX8 | 2006-EMX8 |
| Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2006-EMX9 | 2006-EMX9 |
| Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2006-KS1 | 2006-KS1 |
| Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2006-KS2 | 2006-KS2 |
| Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2006-KS3 | 2006-KS3 |
| Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2006-KS4 | 2006-KS4 |
| Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2006-KS5 | 2006-KS5 |
| Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2006-KS6 | 2006-KS6 |
| Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2006-KS7 | 2006-KS7 |
| Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2006-KS8 | 2006-KS8 |
| Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2006-KS9 | 2006-KS9 |
| Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2006-NC1 | 2006-NC1 |
| Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2006-NC2 | 2006-NC2 |
| Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2006-NC3 | 2006-NC3 |
| Residential Accredited Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2006-QA2 | 2006-QA2 |
| Residential Accredited Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2006-QS2 | 2006-QS2 |
| Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2006-RS6 | 2006-RS6 |
| Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2006-RZ5 | 2006-RZ5 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2006-S1 | 2006-S1 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2006-S10 | 2006-S10 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2006-S11 | 2006-S11 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2006-S12 | 2006-S12 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2006-S2 | 2006-S2 |

| | |
|---|---|
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2006-S3 | 2006-S3 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2006-S4 | 2006-S4 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2006-S5 | 2006-S5 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2006-S6 | 2006-S6 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2006-S7 | 2006-S7 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2006-S8 | 2006-S8 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2006-S9 | 2006-S9 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2006-SA1 | 2006-SA1 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2006-SA2 | 2006-SA2 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2006-SA3 | 2006-SA3 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2006-SA4 | 2006-SA4 |
| Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2006-SP4 | 2006-SP4 |
| Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2007-KS1 | 2007-KS1 |
| Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2007-KS2 | 2007-KS2 |
| Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2007-KS3 | 2007-KS3 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2007-S1 | 2007-S1 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2007-S2 | 2007-S2 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2007-S3 | 2007-S3 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2007-S6 | 2007-S6 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2007-S7 | 2007-S7 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2007-S8 | 2007-S8 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2007-S9 | 2007-S9 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2007-SA1 | 2007-SA1 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2007-SA2 | 2007-SA2 |
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2007-SA3 | 2007-SA3 |

| | |
|---|---|
| Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2007-SA4 | 2007-SA4 |
| Banc of America Funding Corporation Mortgage Pass-Through Certificates, Series 2006-1 | BAFC 2006-1 |
| Banc of America Funding Corporation Mortgage Pass-Through Certificates, Series 2006-5 | BAFC 2006-5 |
| Banc of America Funding Corporation Mortgage Pass-Through Certificates, Series 2007-4 | BAFC 2007-4 |
| U.S. Bank National Association, as Trustee for GSR Mortgage Loan Trust 2005-AR7, Mortgage Pass-Through Certificates, Series 2005-AR7 | 2005-GSR-AR7 |
| U.S. Bank National Association, as Trustee for MASTR ADJUSTABLE RATE MORTGAGES TRUST 2007-1 MORTGAGE PASS-THROUGH CERTIFICATES, Series 2007-1 | 2007-MARM-1 |
| Bayview Financial Mortgage Pass-Through Certificates, Series 2006-D | 2006-D |
| Bayview Financial Mortgage Pass-Through Certificates, Series 2006-A | 2006-A |
| Bayview Financial Mortgage Pass-Through Certificates, Series 2006-D | 2006-D |
| Bayview Financial Mortgage Pass-Through Certificates, Series 2007-A | 2007-A |
| **US Bank National Association, as Trustee, successor in interest to Bank of America, National Association, as Trustee, successor by merger to LaSalle Bank National Association, as Trustee, for** | |
| Residential Funding Mortgage Securities II, Inc., Home Equity Loan Pass-Through Certificates, Series 2007-HSA1 | 2007-HSA1 |
| Residential Funding Mortgage Securities II, Inc., Home Equity Loan Pass-Through Certificates, Series 2007-HSA2 | 2007-HSA2 |
| Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2007-KS4 | 2007-KS4 |
| Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2007-RP1 | 2007-RP1 |
| Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2007-RP2 | 2007-RP2 |
| Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2007-RP3 | 2007-RP3 |
| Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2007-RP4 | 2007-RP4 |
| Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2007-RS1 | 2007-RS1 |
| Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2007-RS2 | 2007-RS2 |

| | |
|---|---|
| Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2007-RZ1 | 2007-RZ1 |
| Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2007-SP1 | 2007-SP1 |
| Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2007-SP2 | 2007-SP2 |
| Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2007-SP3 | 2007-SP3 |
| **U.S. Bank National Association, as Trustee, successor in interest to Wachovia Bank, N.A., as Trustee, for** | |
| Banc of America Funding Corporation Mortgage Pass-Through Certificates, Series 2005-3 | BAFC 2005-3 |
| Banc of America Funding Corporation Mortgage Pass-Through Certificates, Series 2005-4 | BAFC 2005-4 |
| Banc of America Funding Corporation Mortgage Pass-Through Certificates, Series 2005-5 | BAFC 2005-5 |
| Banc of America Funding Corporation Mortgage Pass-Through Certificates, Series 2005-6 | BAFC 2005-6 |
| Banc of America Funding Corporation Mortgage Pass-Through Certificates, Series 2005-7 | BAFC 2005-7 |
| Banc of America Funding Corporation Mortgage Pass-Through Certificates, Series 2005-8 | BAFC 2005-8 |
| Bayview Financial Mortgage Pass-Through Certificates, Series 2005-B | 2005-B |
| Bayview Financial Mortgage Pass-Through Certificates, Series 2004-C | 2004-C |
| Bayview Financial Mortgage Pass-Through Certificates, Series 2004-D | 2004-D |
| Bayview Financial Mortgage Pass-Through Certificates, Series 2005-E | 2005-E |
| Bayview Financial Mortgage Pass-Through Certificates, Series 2005-D | 2005-D |
| Bayview Financial Mortgage Pass-Through Certificates, Series 2005-C | 2005-C |
| **U.S.Bank National Association, as Indenture Trustee for** | |
| Bayview Financial Mortgage Pass-Through Certificates, Series 2008-A | 2008-A |

**COMPOSITE EXHIBIT "A"**

# NOTE

April 11, 2007

[Date]                                        [City]                                        [State]

3856 Sw 154TH ST, Miami, FL  33185

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 500,000.00          (this amount is called "Principal"), plus interest, to the order of the Lender  The Lender is GMAC Mortgage, LLC

I will make all payments under this Note in the form of cash, check or money order

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid  I will pay interest at a yearly rate of 6.625           %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the First       day of each month beginning on June 1, 2007          . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on May 1, 2037             , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. Box 96063, Charlotte, NC 28296-0063

or at a different place if required by the Note Holder

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 3,201.55

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so  I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge  The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes

---

**FLORIDA FIXED RATE NOTE**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

-5 N(FL) (0005)          **Form 3210 1/01**
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3                    Initials



### 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me  The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

### 6. BORROWER'S FAILURE TO PAY AS REQUIRED

#### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **Fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

#### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

#### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means

#### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

#### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

### 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

### 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

### 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note  Some of those conditions are described as follows·

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower

## 11. DOCUMENTARY TAX

The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)          _____ (Seal)
Mariela Roman                    -Borrower                                        -Borrower

**PAY TO THE ORDER OF**          _____ (Seal)          _____ (Seal)
RESIDENTIAL FUNDING COMPANY, LLC          -Borrower                                 -Borrower

**WITHOUT RECOURSE**

D. CHICDO
LIMITED SIGNING OFFICER           _____ (Seal)          _____ (Seal)
GMAC MORTGAGE, LLC f/k/a          -Borrower                                         -Borrower
GMAC MORTGAGE CORPORATION

PAY TO THE ORDER OF
U.S. Bank National Association as Trustee
WITHOUT RECOURSE
Residential Funding Company, LLC          _____ (Seal)
                                                                                  -Borrower
By _____ Judy Faber, Vice President          *[Sign Original Only]*

**Lo** 

# ALLONGE TO NOTE

**This endorsement is a permanent part of the Note in the amount of  $500,000.00**

**NOTE DATE:  4/11/2007**

**BORROWER NAME:  Mariela Roman**

**PROPERTY:  3856 Sw 154th ST, Miami, FL 33185**

**PAY TO THE ORDER OF:**

**WITHOUT RECOURSE**

**U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR RESIDENTIAL FUNDING MORTGAGE SECURITIES I, INC., MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-S7, BY ITS ATTORNEY IN FACT OCWEN LOAN SERVICING, LLC**

**Signer: Angela Olson**
**Title: Servicing Operations Specialist**

CFN  2007R0423487
OR Bk 25569 Pgs 1829 - 1845; (17pgs)
RECORDED 04/26/2007 18:01:16
MTG DOC TAX 1,750.00
INTANG TAX 1,000.00
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

Return To:
GMAC Mortgage, LLC

7 Carnegie Plaza, Cherry Hill,
NJ  08003

This document was prepared by:
Lisa Daleus

Recording Requested by &
When Recorded Return To:
US Recordings, Inc.
PO Box 19989
Louisville, KY 40259

——————————————[Space Above This Line For Recording Data]——————————————

# MORTGAGE

MIN

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **04/11/2007**
together with all Riders to this document.
**(B) "Borrower"** is **Mariela Roman, a Single Woman**

Borrower is the mortgagor under this Security Instrument
**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O  Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(D) "Lender"** is **GMAC Mortgage, LLC**

**FLORIDA**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**          Form **3010**  **1/01**

VMP®  -6A(FL) (0005) 02
Page 1 of 16                    Initials _HR_

VMP Mortgage Solutions, Inc

17

Lender is a **Residential Mortgage Lender**
organized and existing under the laws of **Delaware**
Lender's address is **7 Carnegie Plaza, Cherry Hill, NJ  08003**

**(E) "Note"** means the promissory note signed by Borrower and dated **04/11/2007**
The Note states that Borrower owes Lender **Five Hundred Thousand**

Dollars

(U S $**500,000.00**          ) plus interest  Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than **May 1, 2037**

**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."

**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest

**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions

**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.

**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.

**(L) "Escrow Items"** means those items that are described in Section 3

**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property, (ii) condemnation or other taking of all or any part of the
Property, (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.

**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on,
the Loan.

**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials *HR*

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C F R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the **County**          [Type of Recording Jurisdiction]
of **Miami-Dade**          [Name of Recording Jurisdiction]:
**see attached legal description**

Parcel ID Number:          which currently has the address of
**3856 Sw 154TH ST**          [Street]
**Miami**          [City], Florida **33185**          [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property  All replacements and additions shall also be covered by this Security Instrument  All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

-6A(FL) (0005) 02          Page 3 of 16          Initials _MR_          Form 3010   1/01

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS  Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency  However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15 Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority  (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment

can be paid in full  To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for  (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item  Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9  If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount  Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA  Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA  Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest

 

shall be paid on the Funds  Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4.  Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower  (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien  Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5.  Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires  What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either  (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.



If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.





Initials _HR_

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.



VMP -6A(FL) (0005).02                    Page 8 of 16                    Initials _MR_                    Form 3010   1/01

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums)

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**



**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of



Initials _MR_

-6A(FL) (0005) 02    Page 10 of 16    Form 3010   1/01

any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers



unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender, (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of. (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the

 

purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.





Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products)

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows.

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Attorneys' Fees.** As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

**25. Jury Trial Waiver.** The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.



-6A(FL) (0005) 02                    Page 14 of 16                    Initials _HR_                    Form 3010   1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____
Jennifer Perez Monto

_____ (Seal)
Mariela Roman                            -Borrower

3856 SW 154th St.
Miami, FL 33185

_____ (Address)

_____
Margie Roman Costa

_____ (Seal)
                                                    -Borrower

_____ (Address)

_____ (Seal)
                                                    -Borrower

_____ (Seal)
                                                    -Borrower

_____ (Address)

_____ (Address)

_____ (Seal)
                                                    -Borrower

_____ (Seal)
                                                    -Borrower

_____ (Address)

_____ (Address)

_____ (Seal)
                                                    -Borrower

_____ (Seal)
                                                    -Borrower

_____ (Address)

_____ (Address)

**STATE OF FLORIDA,**       MIAMI-DADE **County ss:**

The foregoing instrument was acknowledged before me this 11 APRIL 2007      by

Mariela Roman

who is personally known to me or who has produced DRIVER LICENSE    as identification.

_____
Notary Public

Notary Public State of Florida
Jennifer Perez-Monto
My Commission DD618067
Expires 12/21/2010

## Legal Description

THE FOLLOWING DESCRIBED REAL PROPERTY SITUATE IN THE CITY OF MIAMI, COUNTY OF MIAMI-DADE, AND STATE OF FLORIDA, TO WIT:

LOT 22 BLOCK 5 OF PONCE ESTATE SECTION TWO ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 156 PAGE 49 OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA.

TAX ID #: 

BY FEE SIMPLE DEED FROM ARMANDO RUIZ, SR., A SINGLE MAN AS SET FORTH IN DEED BOOK 24146, PAGE 4005 AND RECORDED ON 1/13/2006, MIAMI-DADE COUNTY RECORDS.

THE SOURCE DEED AS STATED ABOVE IS THE LAST RECORD OF VESTING FILED FOR THIS PROPERTY. THERE HAVE BEEN NO VESTING CHANGES SINCE THE DATE OF THE ABOVE REFERENCED SOURCE.

VT



RECORDERS NOTE
This document was received in poor condition.

"Certified true and correct copy of the Original
which had been transmitted for recordation."



Record & Return To:
GMAC Mortgage, LLC
Attention· Loss Mitigation
3451 Hammond Avenue
Waterloo, IA 50702
Investor Number ███████
Custodian ID  RW1

─────[Space Above This Line For Recorder's Use]─────

## NON-HAMP LOAN MODIFICATION AGREEMENT
### (Balloon Disclosure Attached)

Loan Modification Agreement ("Agreement") made this May 1, 2012 ("Effective Date") between MARIELA ROMAN Unmarried  ("Borrower") and GMAC Mortgage, LLC, Lender\Servicer or Agent for Lender\Servicer ("Lender") amends and supplements that certain promissory note ("Note") dated April 11, 2007 in the original principal sum of  Five Hundred  Thousand  Dollars and No Cents ($500,000.00) executed by Borrower.  The Note is secured by a Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument"), dated the same date as the Note, and if applicable, recorded on April 26, 2007 with Instrument Number  in Book 25569 and/or Page Number 1829-1845 of the real property records of  MIAMI DADE County, FL.  Said Security Instrument covers the real and personal property described in such Security Instrument (the "Property") located at 3856 SW 154TH ST   MIAMI FL 33185, which real property is more particularly described as follows:

( Legal Description if Applicable for Recording Only )

Borrower acknowledges that "Lender" is the legal holder and the owner, or agent\servicer for the legal holder and owner, of the Note and Security Instrument and further acknowledges that if "Lender" transfers the Note, as amended by this Agreement, the transferee shall be the "Lender" as defined in this Agreement.

Borrower has requested, and Lender has agreed, to extend or rearrange the time and manner of payment of the Note and to extend and carry forward the lien(s) on the Property whether or not created by the Security Instrument.

FAFF 3 STEP

Now, therefore, in consideration of the mutual promises and agreements contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1.  Borrower acknowledges that as of the Effective Date, the amount payable under the Note and Security Instrument (New Principal Balance) is $447,459.83. This represents a reduction in my old principal balance (the balance due prior to the date of this loan modification) by $232,000.00 (Total Deferred + Forgiven Principal) of which $0.00 is being forgiven in full and $232,000.00 is being deferred (the "Deferred Principal Balance") until the Term of my loan expires (the Maturity Date), or when I payoff my loan at the time when I sell or transfer any interest in my home, refinance the loan, or when the last scheduled payment is due, and the Lender will be under no obligation to refinance my loan. Until I am required to payoff the Deferred Principal Balance, I will not be required to pay interest or make monthly payments on the deferred amount.

2.  The Maturity Date is May 1, 2037.

3.  Borrower hereby renews and extends such indebtedness and promises to pay jointly and severally to the order of Lender the Principal Balance, consisting of the amount(s) loaned to Borrower by Lender and any accrued but unpaid interest capitalized to date as applicable, along with any other amounts that may come due under the terms of the original Note and Security Instrument

4.  Interest will be charged on the unpaid, non-deferred, "New Principal Balance" until the non-deferred principal has been paid in full. Borrower promises to pay interest at the rate of 2.000% from May 1, 2012 until I payoff my loan at the time when I sell or transfer any interest in my home, refinance the loan, or when the last scheduled payment is due. If Step Rate: The rate of interest I pay will change based upon Payment Schedule below.

5.  Borrower promises to make monthly principal and interest payments of $1,896.57, beginning on June 1, 2012, and continuing thereafter on the same day of each succeeding month, according to the Payment Schedule below until all principal and interest is paid in full. Borrower will make such payments at 3451 Hammond Avenue, Waterloo, Iowa, 50702 or at such other place as Lender may require. The amounts indicated in this paragraph do not include any required escrow payments for items such as hazard insurance or property taxes; if such escrow payments are required the monthly payments will be higher and may change as the amounts required for escrow items change.

FAFF 3 STEP

If Step Rate

# PAYMENT SCHEDULE

| Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Monthly Escrow Payment Amount | Total Monthly Payment | Payment Begins On | Payment Ends on |
|---|---|---|---|---|---|---|
| 2 000% | May 1, 2012 | $1,896.57 | $1,182 82, adjusts periodically | $3,079.39, adjusts periodically | June 1, 2012 | May 1, 2017 |
| 3 000% | May 1, 2017 | $2,079 20 | Adjusts periodically | Adjusts periodically | June 1, 2017 | May 1, 2018 |
| 3 875% | May 1, 2018 | $2,239 58 | Adjusts periodically | Adjusts periodically | June 1, 2018 | May 1, 2037 |

6.    If on May 1, 2037 (the "Maturity Date"), Borrower still owes any amounts under the Note and Security Instrument, including any "Deferred Principal Balance" as provided for in this Agreement, Borrower will pay these amounts in full on that date.

7.    If "Lender" has not received the full amount of any monthly payment within the grace period provided for in the original Note or as otherwise provided for by law, Borrower will pay a late payment fee to "Lender" in an amount calculated based on the late charge percentage provided for in the original Note, or as otherwise provided for by law, and the monthly payment required under this Agreement, with a maximum as provided for in the Note, or otherwise provided by law. Borrower will pay this late charge promptly but only once on each late payment. The late charge is not in lieu of any other remedy of Lender, including any default remedy.

8.    It is the intention of the parties that all liens and security interests described in the Security Instrument are hereby renewed and extended (if the Maturity Date of the original Note has been changed) until the indebtedness evidenced by the Note and this Agreement has been fully paid. Lender and Borrower acknowledge and agree that such renewal, amendment, modification, rearrangement or extension (if applicable) shall in no manner affect or impair the Note or liens and security interests securing same, the purpose of this Agreement being simply to modify, amend rearrange or extend (if applicable) the time and the manner of payment of the Note and indebtedness evidenced thereby, and to carry forward all liens and security interests securing the Note, which are expressly acknowledged by Borrower to be valid and subsisting, and in full force and effect so as to fully secure the payment of the Note.

9.    If all or any part of the Property or any interest in it is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law. If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower. For purposes of this paragraph, "interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond

for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is transfer of title by Borrower at a future date to a purchaser.

10. As amended hereby, the provisions of the Note and Security Instrument shall continue in full force and effect, and the Borrower acknowledges and reaffirms Borrower's liability to Lender thereunder. In the event of any inconsistency between this Agreement and the terms of the Note and Security Instrument, this Agreement shall govern. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement, including but not limited to, in the case of the Borrower, the obligation to pay items such as taxes, insurance premiums or escrow items, as applicable. Any default by Borrower in the performance of its obligations herein contained shall constitute a default under the Note and Security Instrument, and shall allow Lender to exercise all of its remedies set forth in said Security Instrument.

11. Lender does not, by its execution of this Agreement, waive any rights it may have against any person not a party hereto. This Agreement may be executed in multiple counterparts, each of which shall constitute an original instrument, but all of which shall constitute one and the same Agreement.

12. Important information regarding your loan modification.

**Initial Interest Rate and Initial Payment Amount**

- According to your mortgage payment calculated for long-term affordability, your modified loan will include a deferred balance requiring a balloon payment.
- The amount of your initial monthly payment on your modified loan will be based on three factors:

    (1) the interest rate reflected in the agreement;
    (2) the current balance of the loan; and
    (3) the remaining term \ amortization period of the loan.

Your new monthly payment of principal and interest will be calculated based on a remaining Term of 300 months. Although your new payment will be sufficient enough to substantially pay down your loan balance, a balloon payment in the amount of $232,000.00 will be due when the term of your loan expires or when you pay off the modified loan, which will be when you sell or transfer an interest in your house, refinance the loan, or when the last scheduled payment is due, and the Lender will be under no obligation to refinance your loan.

How Your Monthly Payment Can Change- Balloon Payment

- You will be notified in writing at least 90 but not more than 120 days before the date the balloon payment is due. This notice will be mailed to you at the most current mailing address you supply and will contain information about the amount of the balloon payment, the date it is due and the telephone number of the Lender's representative (or loan servicer's representative) available to answer questions you may have about the notice.

FAFF 3 STEP

THE LENDER HAS NO OBLIGATION TO REFINANCE THIS LOAN AT THE END OF ITS TERM. THEREFORE, YOU MAY BE REQUIRED TO REPAY THE LOAN OUT OF ASSETS YOU OWN OR YOU MAY HAVE TO FIND ANOTHER LENDER WILLING TO REFINANCE THE LOAN.

ASSUMING THIS LENDER OR ANOTHR LENDER REFINANCES THE LOAN AT MATURITY, YOU WILL PROBABLY BE CHARGED INTEREST AT MARKET RATES PREVAILING AT THAT TIME AND SUCH RATES MAY BE HIGHER THAN THE INTEREST RATE PAID ON THIS LOAN.  YOU MAY ALSO HAVE TO PAY SOME OF ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW MORTGAGE LOAN.

---

### Example of Balloon Payment

- The payment amount due at loan maturity can change substantially based upon amount of the loan, interest rate, and any principal payments you choose to make before loan maturity, among other factors.

| | |
|---|---|
| Unpaid Loan Balance at Time of Modification | $100,000 |
| Loan Balance That Does Not Accrue Interest (Deferred Principal) | $25,000 |
| Loan Balance That Does Accrue Interest | $75,000 |
| Interest Rate | 7.7500% |
| Deferred Principal Balance Due at Maturity | $25,000 |

In the **example** above, the outstanding loan balance of $25,000 would be due and payable at maturity.
**This summary is intended for reference purposes only.**

---

EACH OF THE BORROWER AND THE "LENDER" ACKNOWLEDGE THAT NO REPRESENTATIONS, AGREEMENTS OR PROMISES WERE MADE BY THE OTHER PARTY OR ANY OF ITS REPRESENTATIVES OTHER THAN THOSE REPRESENTATIONS, AGREEMENTS OR PROMISES SPECIFICALLY CONTAINED HEREIN.  THIS AGREEMENT, AND THE NOTE AND SECURITY INSTRUMENT (AS AMENDED HEREBY) SETS FORTH THE ENTIRE UNDERSTANDING BETWEEN THE PARTIES.  THERE ARE NO UNWRITTEN AGREEMENTS BETWEEN THE PARTIES.  BORROWER ALSO ACKNOWLEDGES THE RECEIPT BY INCLUSION IN THIS AGREEMENT, OF SPECIFIC INFORMATION DISCLOSING THE FUNCTION OF A BALLOON PAYMENT.

FAFF 3 STEP

Executed effective as of the day and year first above written.

6-11-12 *Mariela Roman*
Date    MARIELA ROMAN

Witness

*Rodolfo Sibless*
Print

_____    _____
Date

_____    _____

_____    _____
Date    Witness

_____
Print

_____    _____
Date

**BORROWER ACKNOWLEDGMENT**

State of ___FL___

County of ___DADE___

On 6-11-12 , before me Jannette Nieves , personally appeared MARIELA ROMAN , personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal

*Jannette Nieves*
Notary Public

My Commission Expires: Oct. 18, 2013

JANNETTE NIEVES
MY COMMISSION # DD 933635
EXPIRES: October 18, 2013
Bonded Thru Notary Public Underwriters

FAFF 3 STEP

GMAC Mortgage, LLC

By: _Alice Decker_ *Alice Decker*
Authorized Officer

Date _7/5/12_

LENDER ACKNOWLEDGMENT

State of    IOWA
County of   Linn

On this _5_ day of _July_, 20_12_, before me, the undersigned, a Notary Public in and for said county and state, personally appeared _____ personally known to me or identified to my satisfaction to be the person who executed the within instrument as Authorized Officer of GMAC Mortgage, LLC and they duly acknowledged that said instrument is the act and deed of said entity, and that they, being authorized to do so, executed and delivered said instrument for the purposes therein contained

Witness my hand and official seal

Notary Public _____

My Commission Expires:

OAKLEY ETTER
COMMISSION NO. 772708
MY COMMISSION EXPIRES
April 24, 2015

FAFF 3 STEP

# NOTICE TO BORROWER IN SPECIAL FLOOD HAZARD AREA

**Borrower: MARIELA ROMAN**                                            **Loan #:** ███████

**Property Location:**    **3856 SW 154TH ST**                   **This Notice Date is as of: December 2, 2011**
                          **MIAMI FL 33185**

**[X] NOTICE TO BORROWER IN NFIP PARTICIPATING COMMUNITY**

We are giving you this notice to inform you that:

- The building or mobile home securing the loan for which you have applied is or will be located in an area prone to high flood risks that we call a Special Flood Hazard Area (SFHA).
- The area has been identified by the Federal Emergency Management Agency (FEMA) as an SHFA using the Flood Insurance Rate Map (FIRM) or the Flood Hazard Boundary Map (FHBM) for the community number 120635. FIRMs are prepared by FEMA in cooperation with the applicable community to identify high flood risk and low-to-moderate flood risk areas. The SFHA is which your building or mobile home is or will be located has at least a one percent chance of a flood equal to or exceeding the base flood elevation (a 100-year flood) in any given year. During the life of a 30-year mortgage loan, the risk of flooding in an SFHA is 26 percent.
- Federal law allows a lender and borrower jointly to request the Administrator of FEMA to review the determination of whether the property securing the loan is located in an SFHA. If you would like to make such a request, please contact us for further information. Borrowers may also call FEMA mapping specialists at (877) 336-2627 to discuss their concerns.
- Federal financial assistance, including FEMA disaster assistance, flood mitigation grants and federally backed mortgage lending is available in the NFIP participating communities. Mandatory flood insurance requirements are applicable to all Federal financial assistance. The mandatory flood insurance purchase requirements under section 102(b) of the Flood Disaster Protection Act of 1973 are applicable to Federally regulated lenders making loans in SFHAs. We will not make you the loan that you have applied for if you do not purchase flood insurance. If you fail to renew flood insurance on the property, federal law authorizes and requires us to purchase the flood insurance for you at your expense. The flood insurance must be maintained for the life of your loan.
    - Flood insurance coverage under the NFIP may be purchased through an insurance agent who will obtain the policy either directly through the NFIP or through a Write Your Own (WYO) company that has agreed to write or service the NFIP policies on behalf of FEMA. Flood insurance also may be available from private insurers that are not Federally backed.
    - At minimum, flood insurance purchased must cover the lowest of: (1) the outstanding principal balance of the loan(s); or (2) the maximum amount of coverage allowed for the type of building under the NFIP; or (3) the full replacement cost value (RCV) of the building and/or contents securing the loan. The market value or land value on which the building is located has no bearing on the RCV of the building.
- Federal disaster relief assistance, the majority of which is in the form of a low-interest disaster assistance loan from the Small Business Administration (SBA), may be available for losses not covered by your flood insurance policy. Flood insurance requirements apply to recipients of Federal disaster assistance grants and SBA disaster assistance loans. If you are planning to build a structure or make repairs, contact the local community's chief executive official to determine building standards for structures within an SFHA.

FAFF 3 STEP

**Loan #:** ███████
**Page 2**

☐     **NOTICE TO BORROWER IN NFIP NON-PARTICIPATING COMMUNITY**

We are giving you this notice to inform you that:

- The building or mobile home securing the loan for which you have applied is or will be located in an area prone to high flood risks that we call a Special Flood Hazard Area (SFHA).
  - The area has been identified by the Federal Emergency Management Agency (FEMA) as an SFHA using the Flood Insurance Rate Map (FIRM) or the Flood Hazard Boundary Map (FHBM) for the community number 120635.  FIRMs are prepared by FEMA in cooperation with the applicable community to identify high flood risk and low-to-moderate flood risk areas.  The SFHA is which your building or mobile home is or will be located has at least a one percent chance of a flood equal to or exceeding the base flood elevation (a 100-year flood) in any given year.  During the life of a 30-year mortgage loan, the risk of flooding in an SFHA is 26 percent.
  - Federal law allows a lender and borrower jointly to request the Administrator of FEMA to review the determination of whether the property securing the loan is located in an SFHA.  If you would like to make such a request, please contact us for further information.  Borrowers may also call FEMA mapping specialists at (877) 336-2627 to discuss their concerns.
- The community in which the property securing the loan is located does not participate in the National Flood Insurance Program (NFIP).  Federal flood insurance is not available.  However, private flood insurance may be available on a limited basis in the SFHAs of non-participating communities.  Federal financial assistance including disaster assistance grants or loans and flood mitigation grants are not available in SFHAs of non-participating communities.  For example, if the non-participating community has been identified for at least one year as containing an SFHA, properties located in the community will not be eligible for Federal disaster relief assistance in the event of a federally declared flood disaster.
- Conventional loans, loans that are not Federally backed can be made on buildings in SFHAs of non-participating communities, if authorized by the regulatory authority of the lending institution.  However, government guaranteed or insured loans (e.g., SBA, VA, and FHA loans) are not permitted to be made in non participating communities, if secured by structures in SFHAs.

A non-participating community can join the NFIP – contact your local chief executive official for additional information.

| | |
|---|---|
| *Mariela Roman* ___05/14/12___ | _____ |
| MARIELA ROMAN | Borrower/Applicant        Date |
| Borrower/Applicant        Date | |
| | |
| _____ | _____ |
| Borrower/Applicant        Date | Borrower/Applicant        Date |
| | |
| _____ | _____ |
| Borrower/Applicant        Date | Borrower/Applicant        Date |

FAFF 3 STEP



Prepared by and return to:
Phelan Hallinan PLC
888 SE 3rd Avenue, Suite 201
Ft. Lauderdale, FL 33316

File Number: ▮▮▮▮▮

CFN 2012R0001083
DR Bk 27948 Pg 0438; (1pg)
RECORDED 01/03/2012 11:22:59
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA
LAST PAGE

[Space Above This Line For Recording Data]

MIN #: ▮▮▮▮▮
MERS Phone: 1-888-679-6377
MERS Address: P.O. Box 2026, Flint, MI 48501-2026

# Assignment of Mortgage

**KNOW ALL MEN BY THESE PRESENTS:**

THAT MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR GMAC MORTGAGE, LLC, its SUCCESSOR AND ASSIGNS, whose address is c/o GMAC MORTGAGE, LLC, 1100 VIRGINIA DRIVE, FORT WASHINGTON, PA 19034, herein designated as the assignor, does hereby grant, bargain, sell, assign, transfer and set over unto U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE FOR RFMSI 2007S7, whose address is c/o GMAC MORTGAGE, LLC, 1100 VIRGINIA DRIVE, FORT WASHINGTON, PA 19034, herein designated as assignee, the mortgage executed by MARIELA ROMAN, on April 11, 2007 and recorded on April 26, 2007 in MIAMI-DADE COUNTY, Florida at Book 25569, Page 1829, encumbering the property more particularly described as follows:

> LOT 22 BLOCK 5 OF PONCE ESTATE SECTION TWO ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 156 PAGE 49 OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY FLORIDA.

**To Have and to Hold** the same unto the said Assignee, its successors and assigns.

**In Witness Whereof,** the said Assignor has hereunto set his hand or caused these presents to be signed by its proper corporate officers, this 2 day of December , 20 11.

Signed and delivered in our presence:

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR GMAC MORTGAGE LLC, its SUCCESSOR AND ASSIGNS

By: _____ 12/2/11

Witness Name: Lauren Balsamo

Name: Kimberly Fritz
Vice President

Witness Name: Kimberly Brown

State of Pennsylvania
County of Montgomery

The foregoing instrument was acknowledged before me this 2 day of December , 20 11 by Kimberly Fritz , on behalf of the corporation. He/she [✓] is personally known to me or [_] has produced a Driver's License as identification.

[Notary Seal]

Notary Public _____

Printed Name: Regina M. Frederick

My Commission Expires: NOV 2 2 2012

NOTARIAL SEAL
REGINA M FREDERICK
Notary Public
UPPER DUBLIN TWP, MONTGOMERY COUNTY
My Commission Expires Nov 22, 2012

**EXHIBIT "B"**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

IN RE:

**MARIELA C. ROMAN**

CASE NO.: 18-22930-LMI

**AKA MARIELA C VIDAL,**

CHAPTER 7

**Debtor.**

_____/

## AFFIDAVIT IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY

I, _____ Javier Rivera _____, declare under penalty of perjury as follows:

1.    I am employed as a _____ Contract Management Coordinator _____ of OCWEN LOAN SERVICING, LLC, and am authorized to sign this affidavit on behalf of OCWEN LOAN SERVICING, LLC as sub-servicer for U.S. Bank National Association, as Trustee for Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2007-S7 ("Movant"). This affidavit is provided in support of the Motion for Relief from Stay (the "Motion") filed contemporaneously herewith.

2.    I make this affirmation based upon my review of the records with regard to this underlying loan transaction, which are kept in the ordinary course of business of OCWEN LOAN SERVICING, LLC. As part of my job responsibilities for OCWEN LOAN SERVICING, LLC, I have personal knowledge of and am familiar with the types of records maintained by OCWEN LOAN SERVICING, LLC in connection with the loan that is the subject of the Motion (the "Loan") and the procedures for creating those types of records. I have access to and have reviewed the books, records and files of OCWEN LOAN SERVICING, LLC, that pertain to the Loan and extensions of credit given to Debtor(s) concerning the property securing such Loan.

17-050597 - MeL

PAGE 1

3.    The information in this affidavit is taken from OCWEN LOAN SERVICING, LLC'S business records regarding the Loan. The records are: (a) made at or near the time of the occurrence of the matters recorded by persons with personal knowledge of the information in the business record, or from information transmitted by persons with personal knowledge; (b) kept in the course of OCWEN LOAN SERVICING, LLC regularly conducted business activities; and (c) it is the regular practice of OCWEN LOAN SERVICING, LLC, to make such records.

4.    The Debtor AKA Mariela Roman has executed and delivered or is otherwise obligated with respect to that certain promissory note referenced in the Motion (the "Note"). The Debtor AKA Mariela Roman has executed and delivered or is otherwise obligated with respect to that certain Mortgage referenced in the Motion (the "Mortgage"). Pursuant to that certain Mortgage referenced in the Motion (the "Mortgage"), all obligations of the Debtor(s) under and with respect to the Note and the Mortgage are secured by the property referenced in the Motion.

5.    As of November 30, 2018, there are one or more defaults in paying Debtor(s) contractual amounts due with respect to the Note.

6.    As of November 30, 2018, the total unpaid principal balance is $606,893.25, which includes the unpaid principal balance of $374,893.25 and deferred principal balance of $232,000.00.

[SPACE INTENTIONALLY LEFT BLANK]

17-050597 - MeL

7.  The following chart sets forth those contractual payments, due pursuant to the terms of the Note, that have been missed by the Debtor(s) as of November 30, 2018:

| Number of Missed Payments | From | To | Monthly Missed Principal and Interest | Monthly Missed Escrow (if applicable) | Monthly Payment Amount | Total Amounts Missed |
|---|---|---|---|---|---|---|
| 1 | 5/1/2017 | 5/1/2017 | $1,896.57 | $831.18 | $2,727.75 | $2,727.75 |
| 11 | 6/1/2017 | 4/1/2018 | $2,079.20 | $831.18 | $2,910.38 | $32,014.18 |
| 1 | 5/1/2018 | 5/1/2018 | $2,079.20 | $967.02 | $3,046.22 | $3,046.22 |
| 6 | 6/1/2018 | 11/1/2018 | $2,239.58 | $967.02 | $3,206.60 | $19,239.60 |
| Less contractual partial payments (suspense balance): | | | | | | $1,692.46 |
| | | | | | Total: | **$55,335.29** |

Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 13 day of Dec. 2018.

Signature: _____
Name: _____ Javier Rivera _____
Title: ____ Contract Management Coordinator ____

STATE OF FLORIDA
COUNTY OF PALM BEACH

The foregoing instrument was acknowledged before me this 13 day of Dec , 2018, by _____ Javier Rivera _____ as _ Contract Management Coordinator _ for Ocwen Loan Servicing, LLC who is the sub-servicer for U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR RESIDENTIAL FUNDING MORTGAGE SECURITIES I, INC., MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-S7, who is personally known to me or who has produced _____ as identification.

_____
Signature of Notary Public
Name of Notary Public: _____ Marilyn Solivan _____

Personally known: ____ ✓ ____
OR Produced Identification: _____
Type of Identification Produced: _____

Notary Public State of Florida
Marilyn Solivan
My Commission FF 987302
Expires 04/28/2020

17-050597 - MeL

PAGE 3

# EXHIBIT "C"

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

IN RE:                                                    CASE NO.: 18-22930-LMI
                                                              CHAPTER 7

MARIELA C. ROMAN AKA

MARIELA C VIDAL,

    Debtor.

_____/

**INDEBTEDNESS WORKSHEET**

**Debt as of Petition Date**

    Total pre-petition indebtedness of debtor(s) to Movant **$642,763.33**

        **Amount of principal: $374,893.25**

        **Amount of deferred principal: $232,000.00**

        **Amount of interest: $ 18,610.53**

        **Amount of escrow (taxes and insurance): $10,082.52**

        **Amount of forced placed insurance expended by Movant: $0.00**

        **Amount of attorneys' fees and costs billed to debtor(s) pre-petition: $6,302.60**

        **Amount of pre-petition late fees, if any, billed to debtor(s): $2,104.43**

        **Any additional pre-petition fees, charges or amounts charged to debtor account and**
        **not listed above: Property Valuation $170.00, Title Search $26.21, Property**
        **Maintenance Expense $125.00, Property Inspection Fee $68.75, Property Inspection**
        **$72.50, Suspense Credit $-1,692.46**

    Contractual Interest Rate:  2%

## Amount of Alleged Post-Petition Default
### (As of November 20, 2018)

**Date last payment was received: 04/20/2018**

**Alleged total number of payment due post-petition from filing of petition through due on 11/1/2018: 1**

**All post-petition payments alleged to be in default:**

| Alleged Amount Due Date | Alleged Amount Due | Amount Received | Amount Applied to Principal | Amount Applied to Interest | Amount Applied to Escrow | Late Fee Charged (if any) |
|---|---|---|---|---|---|---|
| 11/1/2018 | $3,206.60 | $0.00 | $1,095.60 | $1,143.98 | $967.02 | $0.00 |
| Total: | $3,206.60 | $0.00 | $1,095.60 | $1,143.98 | $967.02 | $0.00 |

**Amount of movant's attorney's fees billed to debtor for the preparation and filing and prosecution of this motion**: $750.00

**Amount of movant's filing fee for this motion:** $181.00

**Other attorney's fees billed to debtor post-petition:** $0.00

**Amount of post-petition inspection fees:** $0.00

**Amount of movant's post-petition appraisal broker's price opinion:** $0.00

**Amount of forced place insurance or insurance provided by the movant post-petition:** $0.00

**Sum held in suspense by movant in connection with this contract, if applicable: $0.00**

**Amount of other post-petition advances or charges, for example, taxes, insurance incurred by debtor, etc. (itemize each charge):** $0.00

**Total post-petition debt: $ 2,445.14**

# EXHIBIT "D"



# OFFICE OF THE PROPERTY APPRAISER

## Summary Report

Generated On : 12/3/2018

### Property Information

| | |
|---|---|
| **Folio:** | 30-4916-013-0860 |
| **Property Address:** | 3856 SW 154 PL<br>Miami, FL 33185-4819 |
| **Owner** | MARIELA ROMAN |
| **Mailing Address** | 3856 SW 154 PL<br>MIAMI, FL 33185 USA |
| **PA Primary Zone** | 0101 SINGLE FAMILY |
| **Primary Land Use** | 0104 RESIDENTIAL - SINGLE FAMILY : RESIDENTIAL - TOTAL VALUE |
| **Beds / Baths / Half** | 4 / 3 / 0 |
| **Floors** | 2 |
| **Living Units** | 1 |
| **Actual Area** | 4,381 Sq.Ft |
| **Living Area** | 3,056 Sq.Ft |
| **Adjusted Area** | 3,413 Sq.Ft |
| **Lot Size** | 7,778 Sq.Ft |
| **Year Built** | 2000 |



2017 Aerial Photography   200ft

### Assessment Information

| Year | 2018 | 2017 | 2016 |
|---|---|---|---|
| **Land Value** | $128,663 | $105,663 | $81,279 |
| **Building Value** | $315,721 | $302,049 | $305,599 |
| **XF Value** | $60,087 | $60,748 | $61,410 |
| **Market Value** | $504,471 | $468,460 | $448,288 |
| **Assessed Value** | $379,334 | $371,532 | $363,891 |

### Benefits Information

| Benefit | Type | 2018 | 2017 | 2016 |
|---|---|---|---|---|
| **Save Our Homes Cap** | Assessment Reduction | $125,137 | $96,928 | $84,397 |
| **Homestead** | Exemption | $25,000 | $25,000 | $25,000 |
| **Second Homestead** | Exemption | $25,000 | $25,000 | $25,000 |

Note: Not all benefits are applicable to all Taxable Values (i.e. County, School Board, City, Regional).

### Short Legal Description

| |
|---|
| PONCE ESTATES SEC 2 |
| PB 156-49 T-19477 |
| LOT 22 BLK 5 |
| LOT SIZE 7778 SQ FT |
| FAU 30-4916-000-0400 0410 & 0820 |

### Taxable Value Information

| | 2018 | 2017 | 2016 |
|---|---|---|---|
| **County** | | | |
| Exemption Value | $50,000 | $50,000 | $50,000 |
| Taxable Value | $329,334 | $321,532 | $313,891 |
| **School Board** | | | |
| Exemption Value | $25,000 | $25,000 | $25,000 |
| Taxable Value | $354,334 | $346,532 | $338,891 |
| **City** | | | |
| Exemption Value | $0 | $0 | $0 |
| Taxable Value | $0 | $0 | $0 |
| **Regional** | | | |
| Exemption Value | $50,000 | $50,000 | $50,000 |
| Taxable Value | $329,334 | $321,532 | $313,891 |

### Sales Information

| Previous Sale | Price | OR Book-Page | Qualification Description |
|---|---|---|---|
| 12/01/2005 | $610,000 | 24146-4005 | Sales which are qualified |
| 11/01/2002 | $300,000 | 20853-2127 | Sales which are qualified |
| 12/01/2000 | $225,000 | 19477-4585 | Sales which are qualified |

The Office of the Property Appraiser is continually editing and updating the tax roll. This website may not reflect the most current information on record. The Office of the Property Appraiser and Miami-Dade County assumes no liability, see full disclaimer and User Agreement at http://www.miamidade.gov/info/disclaimer.asp

Version:

**EXHIBIT "E"**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

IN RE:                                                                          CASE NO.: 18-22930-LMI
                                                                                          CHAPTER 7

**MARIELA C. ROMAN AKA**

**MARIELA C VIDAL,**

   **Debtor.**

_____/

### ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY

THIS CASE came on consideration without a hearing on U.S. Bank National Association, as Trustee for Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2007-S7's ("Secured Creditor") Motion for Relief from Stay (Docket No. ##), and the movant by submitting this form of order having represented that the motion was served on all parties required by Local Rule 4001-1, that the 14-day response time provided by that rule has expired, that no one has filed, or served on the movant, a response to the motion, and that the form of order was attached as an exhibit to the motion. Accordingly, it is:

 **ORDERED**:

1. Secured Creditor's Motion for Relief from Automatic Stay is GRANTED.

2. The automatic stay imposed by 11 U.S.C. § 362 is terminated as to the Secured Creditor's interest in the following property located at 3856 SW 154th St, Miami, FL 33185 in Miami-Dade County, Florida, and legally described as:

   **LOT 22, BLOCK 5, OF PONCE ESTATE SECTION TWO, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 156, PAGE 49, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA**.

3. The Order Granting Relief from Stay is entered for the sole purpose of allowing Secured Creditor to exercise any and all *in rem* remedies against the property described above. Secured Creditor shall not seek an *in personam* judgment against Debtors.

4. Secured Creditor is further granted relief in order to contact the Debtors by telephone or written correspondence in order to discuss the possibility of a forbearance agreement, loan modification, refinance agreement or loan workout/loss mitigation agreement.

5. Attorneys' fees in the amount of $750.00 and costs in the amount of $181.00 are awarded for the prosecution of this Motion for Relief from Stay, but are not recoverable from the Debtor(s) or the Debtor(s)' Bankruptcy estate.

###

Submitted by:
Christopher P. Salamone, Esquire
Robertson, Anschutz & Schneid, PL
*Attorney for Creditor*
6409 Congress Ave., Suite 100
Boca Raton, FL 33487


Christopher P. Salamone, Esquire is directed to serve copies of this order on all interested parties and file a certificate of service.